Our first case up this morning is 412-0645, Pleasant Hill Cemetery Association, Keith Smith v. Morefield. For the appellant is Mercer Turner. You are he, sir? Yes. From Bloomington, for the appellee is Robert Clentons. You are he? Mr. Turner, you may proceed, sir. May it please the court. Counsel. And counsel. Good morning. It's a pleasure to be here this morning. It was raining a little bit on the way to the courthouse from Bloomington. That's a good segue into the case today. And it is a beautiful day, despite the fact you see a few clouds and it's not sunny. Anytime we can get a rain after having the worst drought in central Illinois since 1936, it's a blessing and it's a wonderful thing. Hopefully the drought does not repeat itself. The issues in this case actually pertain to questions of natural law. It pertains principally to rainfall and to a law of physics known as gravity, except, you know, in the unique circumstances where NASA has developed ways to train our astronauts. In situations like that, we haven't figured out a way to turn gravity off. And water flows in a natural course based upon the force of gravity. It flows essentially downhill. And that's what the facts in this case are about. A 80 acre farm in McLean County, Illinois, was the subject of drainage alterations. Alterations in the natural drainage that were created by the Township Road Commissioner. And as a result, the matter ended up in the Circuit Court of McLean County. The facts, on the basis of the way the matter was handled, are of course considered well-planned and the case sufficient to state a cause of action. And as a result, reviewing the complaint, the facts show that there were alterations in the natural flow of stormwater drainage across this farm that has caused problems with the farm, slowed down planting times, made spots of the farm wet, have caused, contributed to erosion that's going to uncover existing long-term drainage tiles in place. And the reason we're here is because the trial court believed that the Tort Immunity Act, in particular discretionary immunity granted in the Tort Immunity Act and further discussed in case law and in many cases by the Illinois Supreme Court, the lower court believed that Tort Immunity protected the road commissioner in this case. The facts we submit don't justify the decision of the lower court. First of all, in support of its action, the road commissioner filed an affidavit which indicated that he had deliberately balanced the rights of the parties in this case, making what he did there a deliberate act on his part, and that would be in our view an exception to the Tort Immunity Act, if indeed the Tort Immunity Act had application here. Why is that? Because it was intentional, and an intentional act is... Well, so he's the road commissioner, and it was the exercise of his discretion on how to fix the road, he says, and he chose to fix it in this fashion. The case would be less sound if he said, I didn't really pay any attention, I just let the guys with the trucks decide it. First of all, ministerial acts are clearly not covered by the Tort Immunity Act. The Supreme Court insider, which we cited in our brief, indicates that ministerial acts are acts that are required specifically by law, and it is a requirement of everybody. According to the Illinois Supreme Court, both public bodies and private individuals, regular people, do comply with Illinois drainage law that was specifically stated in Van Meter. And so, fixing the road, or having road construction, or construction of a township road, are all in the area of ministerial acts, and therefore there would not be immunity by the Tort Immunity Act. We are suggesting that, in addition to that, if it did, somehow... Well, I thought your argument was exactly the opposite to what you just said. You just said a moment ago that ministerial acts do not fall under the Tort Immunity Act, and a few minutes before that you said intentional acts don't fall under the Tort Immunity Act. Yes, both. So I guess there's nothing a guy can do, either acts ministerially or intentionally, but either way he gets no immunity. Not on the basis of the facts of this case, Your Honor. Oh, well... That's the position of the appellate, and we believe that our position is supported by the facts, and by long-established interpretation of the Tort Immunity Act in this section that grants discretionary immunity, the explanations given by the Illinois Supreme Court. For there to be discretionary immunity, there first of all has to be some public policy at issue, and then there has to be the exercise of discretion. There is no public policy involved in the road commissioner's acts of maintaining the road. How about this? Our road is washing away. Our road needs to be fixed. How am I going to fix it? Isn't that his job? Fix the roads? Absolutely, yes. Okay. So does he exercise discretion in deciding how to fix it? He exercises sound principles of construction engineering that include a good respect for natural drainage. We have provided you material from IDOT which shows that 30% of IDOT's budget is related directly to stormwater management and the sort of issues that are involved in this case. So I don't dispute that the road needed to be fixed, but you say he chose a bad way to do so. Well, it was an intentional... He altered the natural course of the drainage. He took water that drained in one direction and pushed it onto this farm. He just altered the direction that the water was flowing and forced it onto this farm, which is the opposite of the way it's supposed to occur. And that's why IDOT has such a big budget for stormwater control. It recognizes it can't alter the natural flow. Water needs to flow through in a natural way, get into the Mississippi River, you know, in this large basin that we're in the middle of. And if the law didn't require compliance with natural drainage, there would be chaos in the middle of the United States. There's huge amounts of chaos all over the place. This is the fourth largest drainage basin in the world. Chu Kang, who is with me, an LLM intern from the U of I, she lives on the Yangtze River in China. That's where her home is. It's the third largest drainage basin in the world. And if gravity and rainfall is not respected and allowed to flow in a natural course, you know, there's just utter chaos and extraordinary problems that would develop by the accumulation of stormwater. Now, this is a little case in the big scheme of things, but every property that's involved in the watershed has to respect the natural drainage. And there is no exception existing in Illinois drainage law that would apply to this case. There is nothing which allows a road commissioner to abrogate drainage law. There's nothing which allows him to exercise policy and say the road has priority over natural drainage. And the Constitution of Illinois, in fact, and we've cited it, doesn't give the road commissioner that right. For all these reasons, we believe that the lower court decision was improper and it should be reversed and this matter proceed at the trial level. I have appreciated your questions, Your Honor, and am prepared here today to respond to any other questions that any justice might have. And would reserve the balance of my time or a reasonable amount of time for rebuttal if there are no more questions. Thank you for your time this morning. Okay. Thank you, counsel. Mr. Lentz? Good morning, Your Honor. May it please the court. Thank you. Counsel? It's been many years since I've been here. Well, welcome back. Welcome back. Thank you very much. Essentially, our position is we want to stand on our brief. Be glad to answer any questions. I would like to respond to a couple of comments that have been made by the appellant's counsel here. I think he's suggesting that the drainage law of Illinois is so absolute that it trumps everything else, including the powers of the road commissioner under the Illinois Act to exercise his police powers, which is the basis of the road commissioner's acts in that statute, to provide safe roads in the township. As you know, the road commissioner is an independently elected official. These roads are under his sole discretion. The facts here show, based on the affidavits of the road commissioner, that the road needed repair. He was washing out the shoulders. During certain rains, rain would flow up over the top of the road onto the plaintiff's property. And there was a single old culvert, small culvert, under the road. What he did in rebuilding the road was to put three larger culverts under the road and to prevent the water from coming over the top of the road, thereby making the road safe. I don't think it's fair for the appellant to argue that there was a change in the drainage pattern. It diverted the water from over the top of the road to under the road. Otherwise, it went in the same direction. I think that's what the affidavits say. There are no counter-affidavits from the appellant in this record. Does it influence the volume of the water? No, the same amount of water as far as we know. There's no contrary evidence that I know of in the record. Finally, I would just suggest that in the appellant's briefs, the argument is presented that the trial court somehow didn't explain its rationale. I think in the absence of a bystander's report, which he had every right to do and every opportunity to do, or in the absence of asking the trial court to clarify its order, there's a presumption in favor of the trial court's decision here. I think the threshold issue is whether the Tort Immunity Act is applicable. We think it does. The policy here on the part of the Road Commissioner, Your Honor, is to maintain safe roads. They had this unsafe condition and chose, in their discretion, a means of repairing that in order to preserve and maintain safe roads. Both the policy and the discretionary act balances the interests of the various parties, which is another standard here for reviewing the acts of the Road Commissioner. If the act applies, and we believe it does, then the statute of limitations applies. The original complaint was filed months after the one-year statute ran, and that was a factor, of course, for the trial court to consider as well. So I think those basically summarize our position. I'd be glad to answer any questions. Thank you. Thank you, counsel. Mr. Turner? Yes. Go ahead. If it would please the Court, though. Sure. With regard to the facts that have been discussed here, that, first of all, I believe the complaint should be construed as being well stated. Secondly, Should be construed as what, sir? As being well stated, well flagged, as a cause of action, valid cause of action, but, you know, when viewed in the light of a 2-6-19 motion. However, what was just explained about the facts, which really hasn't been brought forward in the case, since only the pleadings so far have really been considered, there were two areas that affected the natural drainage. One was not discussed here by opposing counsel, and that was where drainage that came under a railroad right-of-way was diverted from flowing in its natural course, and historically to the east, it was dammed up and diverted directly onto one end of this 80-acre parcel. And it then ends up draining onto an area that had never accepted surface water, and it makes it wet, and it needs to be now tiled out, or otherwise, you know, it can't be farmed. And there's allegations in there about the delay in planning, etc., as a result of this. The other area where there was an alteration was separated from this, and that was where drainage across the farm was concentrated into culverts and forced under a road, and that lowered the drainage and is now causing erosion. And it also causes this because the water was concentrated into a stream which didn't exist before. And it's these sort of things which are not permitted by Illinois drainage law and which would be brought out in the past if the case were allowed to proceed at the trial level. I believe I've responded to everything that was brought out by Appalachian Council and am still prepared to respond and would encourage any questions that you might have lingering about this case. I want to thank you for your time this morning. Thank you, Counsel. As seen then, we'll take this matter under advisement and be in recess for a few minutes. Thank you.